UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHELDON SHARPE,

    Plaintiff,

v.                                                                           Case No: 8:18-cv-2940-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Sheldon Sharpe, seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

On February 1, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits, and an application for supplemental security income. (Tr. 16, 201–04.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 111–12, 114–15, 119–20, 124–25.) Plaintiff then requested an administrative hearing. (Tr. 129–30.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 32–62.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 16–24.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–3.) Plaintiff then

timely filed a Complaint with this Court. (Dkt. 1) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1970, claimed disability beginning on January 5, 2016. (Tr. 201, 203.) Plaintiff has a general education diploma ("GED"). (Tr. 38.) Plaintiff's past relevant work experience included work as a construction worker and a mixer. (Tr. 22.) Plaintiff alleged disability due to liver laceration, multiple facial bone fractures, and open fracture of right iliac crest. (Tr. 229.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 5, 2016, the alleged onset date. (Tr. 18.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "status post ORIF of a Le Fort 2 fracture and right comminuted mandible fracture of the anterior body; status post open right iliac wing fracture and right distal radius fracture with DRUJ disruption; status post bilateral rib fractures; and status post liver laceration." (Tr. 18.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can sit for 30 minutes then will need to stand for 15 minutes before resuming a seated position. He can occasionally stoop and climb ramps and stairs, but never kneel, crouch crawl, or climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to hazards and requires an assistive device for ambulating more than 20 feet.

(Tr. 19.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. (Tr. 20.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 22.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as laundry folder, cashier, and ticket taker. (Tr. 23.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 24.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in finding that Plaintiff's injuries would improve within twelve months; (2) the ALJ failed to order an additional consultative examination; and (3) the ALJ misinterpreted medical records from Lakeland Family Health Clinic. For the reasons that follow, none of these contentions warrant reversal.

### A. Plaintiff's Improvements

In two related arguments, Plaintiff argues that the ALJ erred in finding that Plaintiff's injuries would improve within twelve months. (Dkt. 15 at 8–9.) Plaintiff argues that this finding is improper speculation and the ALJ misinterpreted the consultative examiner's opinion as support for this finding. (Dkt. 15 at 8–9.) Plaintiff is correct that the ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992) (Johnson, J., concurring). However, the ALJ does not impermissibly substitute his own opinion by deciding a claimant's RFC. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (holding that "the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC"); *Spivey-Adams v. Acting Comm'r of Soc. Sec.*, No. 3:16–CV–1134–J–PDB, 2017 WL 4297246, at *12 (M.D. Fla. Sept. 28, 2017) (holding that the ALJ "fulfilled her duty under the regulations to assess Spivey-Adams's RFC in light of all the evidence in the record"). In this case, the ALJ properly analyzed the evidence of record to determine whether Plaintiff was disabled under the Social Security regulations.

Plaintiff's injuries are the result of an incident in January of 2016, when Plaintiff was hit by a train. (Tr. 20.) Since the accident, the ALJ noted that Plaintiff "has seen improved functioning in lifting and walking." (Tr. 20.) In April of 2016, Plaintiff had a consultative examination with Edwin Lamm, M.D. (Tr. 462–63.) Dr. Lamm noted Plaintiff to be well-nourished, walked "using a rolling walker to offset pressure on the right lower extremity," but noted that Plaintiff got "on and off the exam table without difficulty." (Tr. 463.) Dr. Lamm found Plaintiff to have "[r]esidual limited range of motion in right hip and right knee," but found it "conceivable that in 3-6 months his symptoms may be much improved." (Tr. 463.) The ALJ gave partial weight to Dr. Lamm's opinion, finding it to be "vague as to the claimant's specific vocational abilities," but gave weight to the finding that improvement in Plaintiff's symptoms is expected. (Tr. 22.)

Plaintiff argues that the ALJ mischaracterized Dr. Lamm's opinion by finding that Plaintiff "would" improve, rather than "may" improve. (Dkt. 15 at 9.) However, the Court agrees with Defendant (Dkt. 17 at 5) that the relevant question is whether Plaintiff has a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). On this issue, Plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). But Plaintiff does not point to any evidence of record, in Dr. Lamm's opinion or otherwise, to suggest that Plaintiff has impairments which are expected to last twelve months. On the contrary, Dr. Lamm's opinion that Plaintiff's symptoms "may be much improved" within three to six months (Tr. 463) is evidence that Plaintiff is not disabled.

Beyond the consultative examination, the ALJ also relied on other substantial evidence that supports the RFC. In May of 2016, Plaintiff reported "some stiffness and soreness in the right

- 6 -

wrist" and pain in the right hip." (Tr. 465.) Plaintiff was shown exercises to improve his range of motion in his wrist and hip. (Tr. 465.) Past May of 2016, the ALJ noted that "the record supports minimal treatment and only follow up monitoring" approximately every four to six months. (Tr. 21.) In September of 2016, Plaintiff was found to have a normal musculoskeletal range of motion. (Tr. 600.) His medication was altered, he was encouraged to exercise as permitted, and encouraged to stop smoking. (Tr. 600.) In January of 2017, physical examination findings were again normal, and his treatment plan focused on blood pressure, low vitamin D, and elevated lipids. (Tr. 595.) In February of 2017, Plaintiff presented for a follow-up check of his blood pressure. (Tr. 582.) His musculoskeletal examination showed normal strength and no swelling. (Tr. 585.) In June of 2017, his musculoskeletal examination was again normal with no swelling. (Tr. 577.) Plaintiff was noted to be still ambulating with a walker (Tr. 574), but as noted by the ALJ, the record does "not provide objective tests that support[ ] his need for a walker. (Tr. 21.) Plaintiff's treatment plan focused on "lifestyle and dietary changes." (Tr. 578.)

Thus, the conservative treatment record supports the ALJ's findings. *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.") (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)). The ALJ also relied on the opinion of Pamela Monolson, M.D., who found that Plaintiff was capable of performing light work with additional limitations. (Tr. 21.) However, based on Plaintiff's reported limitations at the hearing, the ALJ assigned "greater walking and postural accommodations," including "the ability to use an ambulation assistive device as well as a sit/stand accommodation." (Tr. 21–22.) Plaintiff points to no evidence of records suggesting limitations greater than those found by the ALJ and because the ALJ's findings are based on substantial evidence, they must be affirmed. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th

Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.").

### B. Additional Consultative Examination

Plaintiff next argues that the ALJ should have ordered a second consultative examination. (Dkt. 15 at 10–11.) "[T]he ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. §§ 404.1512(b)(1)(ii), 416.912(b)(1)(ii) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). However, "the claimant bears the burden of proving he is disabled," *Ellison*, 355 F.3d at 1276, and has a duty to provide evidence supporting his claim, 20 C.F.R. § 416.912(a)(1) ("This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.").

When the claimant is not represented at the hearing before the ALJ, which is not the case here, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham v. Apfel*, 129 F.3d 1420, 1422–23 (11th Cir. 1997) (internal citations omitted). However, even where the ALJ's obligation to develop the record rises to a special duty, "there must be a showing of prejudice before we will find that the . . . case must be remanded . . . for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Prejudice may be shown where the ALJ has failed to elicit relevant testimony, consider all evidence

in the record, or where the record contains evidentiary gaps resulting in "unfairness or clear prejudice." *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985); *see Brown*, 44 F.3d at at 936 n.9 (finding that there may be unfair prejudice to a claimant where there is an evidentiary gap in the record involving recent medical treatment).

The ALJ is required to order a consultative examination "only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *see* 20 C.F.R. § 404.1519a(b) (stating that the ALJ may order a consultative examination when the evidence in the record is insufficient to allow the ALJ to make a determination). Thus, if there is sufficient information in the record for the ALJ to make an informed decision, the ALJ is not required to order a consultative examination. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Here, Plaintiff was represented by counsel at the hearing before the ALJ. (Tr. 27.) Although the ALJ had a duty to develop the record, it was not the heightened duty required of an ALJ when the claimant is unrepresented. *Graham*, 129 F.3d at 1422. Nevertheless, Plaintiff fails to make the required showing of prejudice. *Id.* at 1423; *Kelley*, 761 F.2d at 1540-41. Plaintiff argues that the ALJ "could have" developed the record with "a second consultative examination." (Dkt. 15 at 10.) But Plaintiff points to no evidentiary gaps in the record resulting in "unfairness or clear prejudice." *Kelly v. Heckler*, 761 F.2d at 1540. Instead, Plaintiff argues that the ALJ improperly "put the burden" on Plaintiff to provide evidence establishing his need for a walker. (Dkt. 15 at 11.) Plaintiff cannot establish prejudice on this point, however, because the ALJ specifically found, based on Plaintiff's own testimony, that Plaintiff does require an assistive device to ambulate more than twenty feet. (Tr. 19, 22.)

Moreover, Plaintiff cannot show prejudice because, as discussed above, substantial evidence supports the ALJ's findings. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (explaining that "the statute does not require absolute certainty; it requires only substantial evidence to sustain the Secretary's findings."). As such, the ALJ was not required to order a second consultative examination. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (finding that "the ALJ did not err by not requesting an additional consultative examination" because the record contained the "the necessary information to determine Robinson's impairments, her residual functional capacity, and her ability to work").

**C. Lakeland Family Health Clinic Records**

Plaintiff also argues that the ALJ misinterpreted the medical records from the Lakeland Family Health Clinic. (Dkt. 15 at 11–13.) Plaintiff argues that the ALJ's finding that Plaintiff "did not get much follow up care" is not supported by substantial evidence. (Dkt. 15 at 11.) Plaintiff suggests that the limited care he received was due to his "financial condition." (Dkt. 15 at 11.) However, the Court agrees with Defendant that the "record in this case indicates that Plaintiff's medical condition did not warrant additional medical treatment." (Dkt. 17 at 12.) As discussed above, Plaintiff's physical examination findings were routinely normal and Plaintiff's treatment plans generally focused on stretching, diet, and exercise. (Tr. 465, 577–78, 585, 595, 600.) Except for one six-week follow-up after Plaintiff was found to have high blood pressure (Tr. 595), Plaintiff's treatment plan generally called for a follow-up appointment between three to six months. (Tr. 553, 578, 585, 600.) There is no evidence that Plaintiff's physicians recommended more frequent care than Plaintiff was receiving.

Plaintiff also suggests that the records from the Lakeland Family Health Clinic show more than "minimal residuals" from Plaintiff's accident. (Dkt. 15 at 12.) However, Plaintiff identifies

no evidence suggesting greater functional limitations than those found by the ALJ.[1] Moreover, the Court's scope of review is limited; this Court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on March 2, 2020.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[1] Plaintiff emphasizes his subjective complaints of hip pain. (Dkt. 15 at 11–13.) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects" of his symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20.) Plaintiff does not challenge this finding. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) ("Outlaw has waived this issue because he did not elaborate on this claim or provide citation to authority about this claim.").